# REPORTS.

## SWAIN *v.* SALTMARSH.

*Construction of deeds—Partial want or failure of consideration of note.*

In construing a deed, proof is admissible of every material fact that will help to identify the person or thing intended, or which will enable the court to put themselves as near as may be in the position of the parties, and especially of the grantor, and the court will then construe the deed so as to give effect to that intention, when they can find enough in the deed to identify the land.

A defendant may show that he was induced to enter into the bargain for the purchase of land by the false and fraudulent representations of the plaintiff as to its location and quality, in order to lay the foundation for a claim that there was a partial want or failure of consideration of the note given for the purchase-money of said land.

ASSUMPSIT, by William B. Swain against Aaron H. Saltmarsh. The writ contained one special count, as follows: " For that the defendant, at Concord aforesaid, on the 28th day of December, 1868, by his note, in writing, under his hand of that date, for value received, promised the plaintiff to pay him, or his order, one hundred and twenty-five barrels of tar, delivered on the wharf in Boston, on or before May 1, 1869,—or $250, as he may think best. Tar to be delivered at East Boston; barrels to be sent there to be filled,—or, if barrels are loaned said Swain, they must be returned to East Boston, and cooperage paid. Now the plaintiff avers that the said Aaron H. Saltmarsh, though often requested, has never delivered said tar, or any portion of the same, as above mentioned, nor has he, though alike requested, paid the sum of $250 in cash, according to his promise aforesaid." There were also the common counts in *indebitatus assumpsit.* Plea, the general issue, and the following brief statement: " The defendant makes the following brief statement of his defence, namely,—the promise declared on was ob-

tained of the defendant by fraud, and is void for want of consideration."

The plaintiff introduced in evidence a writing signed by the defendant, corresponding substantially with the description in his declaration, and some evidence tending to show that he was ready, at the time and place specified, to receive the tar; that he demanded the tar, and afterwards the cash on the contract, but that the defendant refused to pay either. His evidence also showed that the obligation was given for land in Benton, conveyed by the plaintiff to the defendant on the same day.

The defendant introduced his deed of said land. It is a deed of warranty in common form, and describes the premises as follows : "One undivided half of a tract of land, situate in Benton, in the county of Grafton and state aforesaid, set to the right of John Fancher, containing one hundred and seventeen acres more or less, and being the same land conveyed," through several persons there enumerated, to the plaintiff.

It appeared that there was no tract of land in the town of Benton that had ever been set out or lotted that answered the description of the deed; but it appeared that there was, at the date of the deed, and at the time of the trial, a tract of about seven thousand acres, including Moosilauke mountain, in Benton, which had never been allotted or divided among the original proprietors, or those having their rights, either upon the ground or otherwise, and that John Fancher was one of the original proprietors of the town.

The defendant objected that the description in the deed was inoperative to convey an undivided and unascertained interest in said tract, inasmuch as it calls for a lot of one hundred and seventeen acres set to the right of John Fancher; and, unless it appears that some lot of one hundred and seventeen acres has been set out to said right, the deed conveys nothing.

The court overruled this objection, and held that, in case there was no lot of one hundred and seventeen acres more or less, which had ever been lotted or set out to the right of John Fancher, in said town, which would answer the description in said deed, the call of the deed would be answered by showing the existence of a tract of seven thousand acres in Benton, which had never been divided in any way among the original proprietors or their grantees, and that said Fancher was an original proprietor, and that in such case the deed would convey one undivided right of such original proprietor in such tract of land. To this the defendant excepted.

Various other questions were raised in the case concerning the title to this land, not important to be here stated.

The defendant offered to show that he was induced to enter into the bargain for the purchase of the land by the false and fraudulent representations of the plaintiff as to its location and quality, in order to lay the foundation for a claim that there was a partial want or failure of consideration of the note.

The court by a *pro forma* ruling excluded this evidence, and the

defendant excepted; and thereupon, there being no question for the jury, the court ordered a verdict for the plaintiff for $250, and interest from September 1, 1869 (it being agreed that a demand was then made); and the defendant excepted.

The defendant then moved in arrest of judgment; and the plaintiff moved for leave to amend his special count by striking out all the words after the word " paid," in line of the special count, to the end of said count, and inserting therefor the following words, to wit,—and the plaintiff avers that the said tar at said time and place was worth two dollars for every barrel; and that he, the said plaintiff, was then and there ready to receive the said tar, and then and there did specially request the said Aaron H. Saltmarsh to deliver said tar; and that the said Aaron H. Saltmarsh, though so specially requested, and though often otherwise requested, hath never delivered said tar or any portion of the same to the said plaintiff, nor has he, the said Aaron H. Saltmarsh, though alike requested, paid the sum of two hundred and fifty dollars in cash according to his promise aforesaid, but unjustly neglects and refuses so to do.

Both motions, with the question of discretion upon the allowance of the plaintiff's motion, were reserved.

*Marshall & Chase*, for the defendant.

I. The plaintiff's deed to the defendant describes " an undivided half of a tract of land, situate in Benton,  *  *  set to the right of John Fancher, containing 117 acres more or less." The deeds referred to in this deed contain a like description, and do not add anything to the above, either in themselves or by reference to other deeds;—so the above may be considered as the whole description of the premises conveyed. We maintain that this description cannot be applied to an undivided half of an undivided share in a tract of land containing about 7,000 acres,—and for the following reasons:

1. Because " a tract of land " is a quantity of land, a region, a district. See Webster's and Worcester's Dictionaries. In *Webster* v. *Atkinson*, 4 N. H. 24, RICHARDSON, C. J., says that, by the clause " a certain tract of land, an entire tract of land must most clearly be understood;" and again, on page 27, he says, " we have shown that by a tract of land, part of a lot, no person would understand that an undivided part of a lot was intended." The word " tract " is not applicable to an undivided share of a piece of land. An undivided seventieth of a piece of land cannot be termed a tract of land.

2. Because the land is not only described as " a tract," but as a tract of limited and definite quantity—as " containing 117 acres more or less "—which is incapable of any other construction than as indicating a piece of land in severalty, having known boundaries, and not an undivided interest in common lands.

3. Because it is described as a tract of land set to the right of John Fancher. John Fancher was one of the original proprietors of the

township, and his right was such an undivided share of the township and of each portion thereof as one is of seventy-one—that being the whole number of proprietors. When any portion of the township was divided, and John Fancher thereby became proprietor of a particular part thereof in severalty, such part was set to his right; that is, it was separated, assigned, or allotted to him by virtue of his right in the whole before division. So, this portion of the language of the deed imports a particular piece of land having boundaries, and not an undivided interest in a large tract. It could not be said of an undivided interest in land, that it was set to the right of John Fancher, for such interest would be the right itself.

4. Because there are no words in the deed that are descriptive of an undivided interest in land holden in common; but as shown above, all describe a definite tract, holden in severalty.

Therefore the rule of law in relation to the construction of deeds, so often discussed and applied in our reports, cannot make this deed convey an undivided interest in common lands. *Webster* v. *Atkinson*, above cited; *Drew* v. *Drew*, 28 N. H. 489; *Emerson* v. *White*, 29 N. H. 498; *Harvey* v. *Mitchell*, 31 N. H. 575; *Bell* v. *Sawyer*, 32 N. H. 72; *Eastman* v. *Knight*, 35 N. H. 551; *Johnson* v. *Simpson*, 36 N. H. 91; *Richardson* v. *Palmer*, 38 N. H. 212; *Tenney* v. *East Warren Lumber Co.*, 43 N. H. 349; *March* v. *Eastern Railroad Co.*, 43 N. H. 521. None of the elements required by this rule for such a construction exist in this deed. Hence it clearly appears, as we respectfully submit, that the position of the defendant upon this point at the trial was correct; and that the ruling of the court, that the call of the deed is answered by showing the existence of a tract of 7,000 acres in Benton, to an undivided interest to which the deed relates, was incorrect.

There was in fact no such tract of land in Benton as that described in the deed—none that would answer to said description. The deed, therefore, conveyed nothing, and consequently there was a total failure of the consideration for the defendant's promise. In fact, there was no consideration for the promise originally, and the promise is a *nudum pactum.* Such being the character of the promise, the defendant cannot be compelled to fulfil it. 1 Par. on Con. 353, 386, Bk. II, ch. 1, secs. 1 and 14; 2 Kent's Com. 603, *et seq.;* 2 Gr. on Ev., sec. 136; *Reed* v. *Prentiss*, 1 N. H. 174; *Tillotson* v. *Grapes*, 4 N. H. 444, and authorities cited; *Fletcher* v. *Chase*, 16 N. H. 38; *Rice* v. *Goddard*, 14 Pick. 293; *Trask* v. *Vinson*, 20 Pick. 110. But this is too plain to require a further citation of authority.

II. It becomes material to inquire whether the defendant may not show that he was induced to enter into the contract in question by fraud, and that whatever he got by his deed was of much less value than he agreed to pay for it; and whether the sum which the plaintiff is entitled to recover should not be reduced accordingly. If the writing declared on is to be regarded as a promissory note, within the meaning of sec. 11, ch. 201 of the Gen. Stats., the defendant, having filed a brief statement thereof, may prove a partial want or failure of consideration

in reduction of the damages. Although it is not strictly a promissory note within the meaning of the commercial law, yet we see no reason why this statute may not be construed so as to include such a contract. Such contracts are termed notes in our reports. *Bailey* v. *Simonds*, 6 N. H. 159; *Brown* v. *Berry*, 14 N. H. 459. But if this contract does not come within the provisions of this statute, we still claim that the defendant may show, in reduction or recoupment of the damages, that he was defrauded, and that the premises conveyed to him were not worth as much as he promised to pay. This is another instance where circuity of action is prevented by doing justice through the instrumentality of one action instead of two. Where personal property is sold under such circumstances, and, the purchaser retaining it, an action is brought against him for the price, he may recoupe his damages in such action. 2 Kent's Com. (11th ed.), *472, note h, *484, note 3; Sedg. on Damages, ch. 17; *Britton* v. *Turner*, 6 N. H. 489. There is no reason why the same principle should not apply in the sale of real estate, and such has been held to be the law in several of the states. Sedg. on Damages, 509, note 2, and 560. As the defendant does not get what he bargained for, he should not be compelled to pay the price agreed upon, but only a fair compensation for what he does get.

III. The plaintiff's declaration is so faulty as to entitle the defendant to an arrest of judgment.

1. It appears from the contract that the plaintiff was to furnish the barrels in which the tar was to be delivered, and was to send them to East Boston to be filled. The defendant could not be required to deliver the tar until this was done. There is no allegation in the declaration that the plaintiff did furnish the barrels as aforesaid, or procure a loan of them from the defendant, and nothing amounting to such an allegation. The allegation that the defendant, "though often requested, has never delivered said tar, or any portion of the same, as above mentioned," is not equivalent to the allegation required. Neither is there any allegation of a refusal of any kind on the part of the defendant. There is nothing in the declaration showing impliedly or otherwise that the defendant has broken his promise, and if all the allegations therein were proved, it would not entitle the plaintiff to a verdict. In other words, no cause of action is stated in the declaration. The declaration is a statement of a defective title, and not a defective statement of title. And such a defect is not cured by verdict. *Bedell* v. *Stevens*, 28 N. H. 118, and authorities cited; *Sewall's Falls Bridge* v. *Fisk & Norcross*, 23 N. H. 171; *Colebrook* v. *Merrill*, 46 N. H. 160.

2. If the amendment offered by the plaintiff would cure this defect, it should not be allowed. For, if the declaration had been sufficient when the case was before the jury, the defendant might have satisfied the jury that he concluded to deliver the tar, and was ready to do so in accordance with his promise, but that the plaintiff did not furnish him barrels to put the same in, as he was bound to do, and for that reason alone he had not delivered it. And if he had thus satisfied the jury, their verdict must have been in his favor. An amendment which

would affect the questions submitted to the jury to such an extent cannot be made after verdict. Great injustice would be done by such course. *Whittier* v. *Varney,* 10 N. H. 291; *Rowell* v. *Bruce,* 5 N. H. 382.

*B. E. Badger,* for the plaintiff.

I. The evidence in this case was, that 7,000 acres of undivided land in the town of Coventry, now Benton, was set in shares of 117 acres each to the original proprietors of Coventry; that John Fancher was one of the original proprietors, and that a right of 117 acres was set to him, and that the right has been known and taxed as the " John Fancher right," from the year 1764 down to the present time; that the deed of Swain to Saltmarsh, after describing the land as " an undivided half of a tract of land situate in Benton," further describes the land as " set to the right of John Fancher, containing 117 acres more or less."

Now, we maintain, this description is sufficient, and the call of the deed is wholly answered for the following reasons: That this is the only description that could be given of the land, for the land has never been known by any other description, and therefore could not be described in the deed except as the " John Fancher right of 117 acres; " and if there is any uncertainty in the first part of the deed, and it is inconsistent on being applied to the premises, it does not vitiate the deed, but may be wholly rejected, as the evident intent of the deed is to convey one half of the John Fancher right, and nothing else. *Hall* v. *Foster,* 7 Vt. 100; *Peaslee* v. *Gee,* 19 N. H. 273; *Bell* v. *Woodward,* 46 N. H. 315; *Jackson* v. *Marsh,* 6 Cow. 281; *Jackson* v. *Clark,* 7 Johns. 217; *Worthington* v. *Hylyer,* 4 Mass. 196.

In *Lyman* v. *Loomis,* 5 N. H. 408, it is well settled that " if the description is sufficient to ascertain the land to be conveyed, the land will pass, although it do not agree with some of the particulars of the description." Now, in this case, there can be no doubt but what the description is sufficient to ascertain what land is intended to be conveyed. There being but one John Fancher right in the town of Benton, there can be no difficulty in ascertaining, from the description in Swain's deed " set to the right of John Fancher, containing 117 acres more or less," what land is meant, and there can be no difficulty in identifying the land deeded,—the case of *Greely* v. *Steele,* 2 N. H. 284, being exactly in point, where it was held that there being but one Ray right in the town, even though wrongly described as the Christopher instead of the Christian Ray right, the deed was good.

The law being well settled, in the following cases, " that a deed is to be construed to give effect to the *intent* of the parties "— *Chamberlain* v. *Crane,* 1 N. H. 46; *Bell* v. *Sawyer,* 32 N. H. 72; *Winnipiseogee Co.* v. *Perley,* 46 N. H. 83; *Wallis* v. *Wallis,* 4 Mass. 135; *Litchfield* v. *Cudworth,* 15 Pick. 23—the question in this case is, was it the intent of Swain to deed to Saltmarsh his interest in the John Fancher right?

Applying the law, as laid down in *Abbott* v. *Abbott*, 53 Me. 356, " that in determining the true construction of a deed it is proper to look at its origin and the sources of its derivation as well as the then existing state of facts," we find that the land is described in the collector's deed to Mann as " one undivided share drawn to the original right of John Fancher, being 117 acres    *    *    situate in the town of Benton," &c. The same, or similar language, is used in all the conveyances, down to Saltmarsh's deed, each referring to the " John Fancher right of 117 acres." Such being the case, there can be no doubt, we submit, that it was the clear intent of Swain's deed to convey to Saltmarsh one half of the " John Fancher right of 117 acres," whether described as a " tract," or by any similar language. We submit, further, that Swain, being a " tenant in common," deeded his interest to Saltmarsh, and that Saltmarsh, as a " tenant in common," has a good and sufficient title to an undivided half of the " John Fancher right," it being settled in *Canning* v. *Pinkham*, 1 N. H. 353, and *Great Falls Co.* v. *Worster*, 15 N. H. 414, that a deed by one tenant in common, conveying a certain number of acres, is not void for uncertainty. The whole number of acres being ascertained, it will operate to convey a proportionate share,—the land to be owned in common until an election is made by the several grantors where the land shall be situated.

II. The language of General Statutes, sec. 11, chap. 201, is,— " When an action upon a bill of exchange, draft, or promissory note," &c. Now, we respectfully submit that the memorandum declared on in this suit is not included in the foregoing class of claims, and is not in any sense a bill of exchange, draft, or promissory note, but a special contract, and that the ruling of the court was correct in not allowing the defendant to show fraud in reduction of Swain's claim for the purchase-money. We further submit, that no advantage can be taken of the special count in the writ in arrest of judgment, as the terms of the count are broad enough to comprehend the proof submitted on the trial. The count should have been demurred to before trial, and the verdict covers the defect, if any exists. *Sewall's Falls Co.* v. *Fisk & Norcross*, 23 N. H. 180, 181, and cases there cited; *Sawyer* v. *Whittier*, 2 N. H. 315; *White* v. *C. R. R.*, 30 N. H. 209.

III. And the " count," if not good, is cured by the amendment; and we submit that the position of the defendant, that he could have shown, but for the amendment, that Saltmarsh would have delivered the tar *if the plaintiff had delivered the barrels*, is wholly untenable, as the contract itself shows it was optional with the defendant *either* to have Swain deliver the barrels, or furnish them himself; and the defendant could have furnished the barrels and tar, if he so chose;—but the evidence was, on trial, that he *wholly* refused to deliver the tar, and therefore the questions submitted to the jury were not altered in the least by the amendment, and no injustice is done the defendant.

SARGENT, C. J.  The deed in this case was well enough upon its face to convey a lot of land such as is described, if there had been any such

lot in town ; but certain facts were proved in evidence concerning the land, viz., that there was no separate lot of land in Benton set off or allotted to the right of John Fancher, to which the deed could apply, and that the only right which he had in town was an undivided right, which he owned as one of the original proprietors of the town, to a tract of land of about 7000 acres, which had never been lotted or divided among the proprietors, or their grantees, in any way whatever. It appeared that this tract of land was large enough to give to the right of each proprietor about 117 acres, when divided.   Can the call in this deed be answered, and the deed be held effectual, to pass this right ?

Putting ourselves in the place of the parties to the deed, and especially in the place of the grantor, with a knowledge of the facts which he must be presumed to have known about his own title, and we think the description of the deed may be answered by this right.   Each proprietor had a right to have 117 acres set out to him, of this undivided land, and it seems that this right was described in the deed, not as allotted or set off, but simply as set to the right of each proprietor ; and the right of John Fancher to have 117 acres of this undivided land allotted or set off to him as his share was spoken of as the tract set to the right of John Fancher, and as containing 117 acres more or less ; a pretty indefinite mode of expression to be sure, but which must, we think, be interpreted to mean, the right which John Fancher had to have a tract of 117 acres set off, or set out and allotted to him, as his just proportion and share of the 7000 acres of undivided proprietary lands in the town of Benton.   When these facts are all understood, and also the other fact that there was nothing else to which the deed could refer, there seems to be no great difficulty in understanding what was meant by the deed.

This is in accordance with the general rule in such cases, that proof is admissible of every material fact that will help to identify the person or thing intended, and which will enable the court to put themselves as near as may be in the situation of the parties to the deed ; and then when the court, by the aid of all these facts, can ascertain the intention of the parties, and especially of the grantor, they will construe the deed so as to give effect to that intention when they can find enough in the description, after rejecting all the particulars in which it is false or mistaken, to identify the land.   *Lane* v. *Thompson*, 43 N. H. 320 ; *Tenney* v. *East Warren Lumber Co.*, 43 N. H. 343 ; *Goodhue* v. *Clark*, 37 N. H. 526 ; *Shore* v. *Wilson*, 5 Scott's N. R. 958 ; *Emerson* v. *White*, 29 N. H. 482, 498 ; *Webster* v. *Atkinson*, 4 N. H. 21 ; *Bullen* v. *Runnels*, 2 N. H. 258 ; *Cocheco Manf'g Co.* v. *Whittier*, 10 N. H. 305 ; *Richardson* v. *Palmer*, 38 N. H. 212 ; *Harvey* v. *Mitchell*, 31 N. H. 582.

We think the ruling was right, that this deed applies to and conveyed this interest in land, which was thus proved to be in Benton, in which John Fancher had a right.

II. Has there been any want or failure of consideration in this case,

either total or partial? There has been no rescinding of the contract in this case. If any fraud was practised upon the defendant, when he ascertained the fact, when the fraud was discovered, he might have rescinded the contract by giving back or tendering all that he had received under the contract. If he was thus defrauded, he could, upon discovery of the fraud, have given back or tendered a deed of the premises, in proper form, to convey all the right or interest which he received by his deed, and given notice of his intent to rescind the contract, and that he should not pay the note or any part thereof. But he has done nothing of that kind. He has held his deed, and still holds it, and the rights and interests which it conveys. There has been no failure of consideration, either total or partial, for the defendant holds, now, all the consideration for this note that he had in the first place, or has ever had. Nor was there a total want of consideration, as we have seen. Was there a partial want of consideration?—for that is the only question that remains.

In *Butler* v. *Northumberland*, 50 N. H. 33, this question was considered, where the suit was for goods sold and delivered, and the defence was that the goods were not according to the sample; that they were inferior in quality to the kind of goods that were bought;—and it was held, in that case, that such evidence might be admissible, as tending to show a partial want or failure of consideration. The distinction was there noticed between suits on promissory notes, and on contracts respecting personal property and services. In this state, it was formerly held that, in a suit upon a promissory note given for the purchase-money, alike in case of chattels or real estate, if there was a partial failure of consideration, which could be ascertained by mere computation, the deduction might be made; but if it was a matter of unliquidated damages it could not be considered, but the defendant must resort to his action for a remedy. *Drew* v. *Towle*, 27 N. H. 412; *Riddle* v. *Gage*, 37 N. H. 519.

But, in 1861, a statute was passed which is embraced in the Gen. Stats., ch. 201, sec. 11, as follows: "When, in an action upon a bill of exchange, draft, or promissory note, a total want or failure of consideration would be a defence, the defendant may, upon filing a brief statement thereof with his plea, prove a partial want or failure of consideration in reduction of the damages." Under this statute, the case of *Nichols* v. *Hunton*, 45 N. H. 470, was decided in 1864, which is a case very similar to this. That was a suit upon a note given for a horse that was fraudulently represented to be kind and sound, when he was not so; and the court held that this was a case of partial want or failure of consideration under the statute, and the verdict for the plaintiff was set aside. The case of *Clough* v. *Baker*, 48 N. H. 254, stands upon ground entirely different from this case; and, while it stands well upon its own ground, it is not an authority here.

*Sanborn* v. *Osgood*, 16 N. H. 112, is directly in point, that where a purchaser is induced by the fraudulent representations of the seller to make a purchase of land, and the farm he bought was worth some-

thing, there could be only a partial failure or want of consideration, which, as the law was then held to be, could not be deducted because the amount was unliquidated and unascertained. The facts were held to show a partial want of consideration, which then could not be deducted, but which now, under our present statute, may be.

The evidence offered in this case, to show a partial want or failure of the consideration for the note, was competent under our statute, and under the brief statement in this case; for we think a partial want or failure of consideration may be proved under a brief statement that there was a total want or failure of the same.

III.   We see no objection to the amendment which was asked for, nor any grounds for the motion in arrest.   This case stands, then, precisely like the case of *Butler* v. *Northumberland, supra,* where the verdict stands well, upon the note, as rendered.   The only question is, as to whether there should be any deduction from the full amount of that verdict on account of any partial want of consideration, in consequence of any false and fraudulent representations of the plaintiff at the time of the sale, in any material matter affecting the value of the land conveyed.

If the defendant so elects, he may have a new trial upon that issue, and then judgment will be rendered upon both verdicts in a way to do justice between the parties,—otherwise,       *Judgment on the verdict.*